**RUSHING et al. v. MAYFIELD CO.**

No. 1650.

Court of Civil Appeals of Texas. Eastland.

April 2, 1937.

Rehearing Denied April 30, 1937.

620

Saye & Saye, of Longview, for appellants.

Lasseter, Simpson & Spruiell, of Tyler, for appellee.

FUNDERBURK, Justice.

S. P. Rushing and J. C. Falvey by this suit sought to recover of Mayfield Company damages for the alleged breach of a written contract, dated October 3, 1930. The contract purported to obligate the defendant, upon prescribed conditions, to deliver to plaintiffs, through an escrow agent, a certain mineral lease; and obligated plaintiffs, upon stated conditions, to pay as consideration therefor the sum of $19,000. The lease was executed (except as to delivery), and in accordance with the provisions of the contract was deposited in escrow in Citizens National Bank of Tyler, together with a copy of the contract and $2,000 of the consideration. (Nominally the contracting parties were S. P. Rushing and Mayfield Company, the former being also named as lessee in the lease. Hereinafter Rushing will be referred to as plaintiffs, or lessee, and Mayfield Company, as defendant, or lessor.)

Conditions of the contract were, (a) lessor was to deliver an abstract to lessee within 20 days; (b) lessee was to have 10 days thereafter to examine title and make written objections thereto; (c) in case of defects pointed out by objections lessee was to have 10 days thereafter to cure such defects and objections "unless it shall be found that suit is necessary to cure such defects"; (d) in case lessor failed to cure such defects within the time specified lessee had the optional right to have such defects cured "provided he does so within 10 days after the time allowed lessor to cure such defects"; (e) lessor was to furnish "good merchantable oil title"; (f) lessee "within 15 days after such title is furnished or tendered" was to pay lessor, at the escrow bank, the balance of the consideration, to wit, $17,000, whereupon the bank was to pay lessor the $2,000 and deliver the lease to lessee; (g) if the lessor furnished or tendered within the time specified a good and merchantable oil title and lessee failed and refused to pay the balance of the consideration, lessee was to forfeit the deposit of $2,000 as liquidated damages, it thereupon becoming the duty of the bank to pay the $2,000 to lessor, together with a return of the undelivered lease; (h) if lessor failed to furnish and tender good merchantable oil title within the time specified, and lessee failed to exercise his option to cure defects in the title, if any, lessee was to have the right to withdraw the deposit, it thereupon becoming the duty of the bank to return said deposit to the lessee and the lease to the lessor.

According to the allegations in plaintiffs' petition, following the execution of the contract and the deposit of a copy thereof in the escrow bank with the lease and the $2,000, as provided in the contract, the defendant furnished the required abstract of title a few days after the specified 20 days' time, but which was accepted and the delay waived. Within the specified 10 days thereafter, plaintiffs, by their attorneys, examined the abstract and furnished defendant's attorneys with certain written objections pointing out defects in the title. Defendant failed to eliminate the defects as pointed out within the next 10 days as specified, but on November 29, 1930, defendant, through its attorneys "who had full and plenary authority to represent" defendant, advised plaintiffs' attorney that they were working on the title and would be able to eliminate the defects and cure the title within a few days, *to which plaintiffs assented.* "On several occasions thereafter plaintiffs, by their attorney, called upon 'defendant's attorneys to return the abstract and curative work they had procured in order that plaintiffs could determine whether or not the title was merchantable, said attorneys on each occasion being informed that plaintiffs would accept the title and waive the delay if the defects had been eliminated. On each such occasion the attorneys of defendant said they would return the abstract in a short time. On January 18, 1931, defendant's attorneys informed plaintiffs' attorney that the defects would be eliminated and the abstract returned in 3 or 4 days and the plaintiffs would be expected to accept the title and go ahead with the performance of the contract, to which the attorney for Rushing [plaintiffs] agreed." It was further alleged that at that time, unknown to plaintiffs, said defects in the title had been cured. Defendant had then been negotiating with other parties to lease the land covered by the lease in question and on January 22, 1931, without notice to the plaintiffs, or giving them opportunity to accept or reject the title, defendant leased part of the land to a third party, and shortly thereafter remaining portions of the land to other parties. As a basis for the claim of damages, it was alleged that the land had after the date of the contract enhanced in value from the contract price of $19,000 to $532,500.

The defendant answered first with a special plea denominated "plea in abatement." This was followed by a general demurrer and other pleas. On October 9, 1935, the trial court made an order reciting that upon that day "came on to be heard and considered the amended plea in abatement of the defendant, Mayfield Company, filed herein (said plea having been passed from term to term by agreement of the parties and with the consent of the court) and the general demurrer of said defendant Mayfield Company, and came the plaintiffs and defendant, by their attorneys, and announced ready for trial on said plea in abatement and general demurrer of defendant, Mayfield Company.

"And the court, after hearing said amended plea in abatement and the general demurrer of the defendant Mayfield Company, and the evidence in support of said plea in abatement, is of the opinion that said amended plea in abatement and general demurrer of the defendant, Mayfield Company, should be sustained." It is then recited that plaintiffs having declined to amend their petition and having elected to stand on the same, "it is therefore ordered, adjudged and decreed by the court that the amended plea in abatement and general demurrer of the defendant, Mayfield Company, be and each of said pleas are hereby sustained and that the suit of plaintiffs be abated and dismissed," etc.

The trial court apparently entertained the view, not challenged by either party, that there was no inconsistency between its action in sustaining the plea in abatement and in sustaining the general demurrer. If the plea denominated "plea in abatement" was such, in fact, in the sense that a failure to interpose it in the due order of pleading would constitute a waiver thereof, then the court by sustaining it and abating the suit by that very action deprived itself of jurisdiction to pass upon the general demurrer. Manifestly the court had no power to adjudge in response to a general demurrer that plaintiff's petition was insufficient to state a cause of action in a suit which had already been abated.

The real defense presented by the plea styled "plea in abatement" as its true nature was shown by the evidence offered in support of it, was the defense of estoppel by judgment. "The standing and effect of a pleading are not determined by the 'style' given it by the pleader, but by its content and the evident purpose for which it is offered. Thus * * * a so-called plea in abatement has been treated as a plea in bar." 33 Tex.Jur. 531, § 99. A plea presenting the defense of estoppel by judgment is a plea in bar, which, in due order of pleading, comes after a general demurrer. Therefore, if we are correct in the view that the plea in question was one presenting the defense of estoppel by judgment, it would appear that the court should have, and therefore presumably did, pass upon the general demurrer first. If so, by its action in sustaining the general demurrer the court was thereby deprived of any authority to determine the plea of estoppel. Pleas which with respect to others are, according to law, required to be filed in a certain order should also be determined in that order. 33 Tex.Jur. 529, § 96. This, we think, supports the presumption, above stated, that they have been so determined when the record, as here, shows nothing to the contrary. From these considerations, we are led to conclude that it is our duty to determine first the question of whether plaintiffs' petition was subject to general demurrer.

The cause of action which plaintiffs in their petition attempt to allege is one for damages for the breach of a contract. It is an action which in jurisdictions requiring legal and equitable actions to be administered separately is classed as an action at law. It is not the same cause of action which was involved in Rushing v. Mayfield Co. (C.C.A.) 62 F.(2d) 318, 320. The cause of action which the court in that case held the pleadings insufficient to state was one for specific performance of a contract. It is true that in the alternative an action for damages was attempted to be alleged, but the court held that that was not proper equity practice and excluded it from consideration.

We deem it unnecessary to cite authority upon the proposition that a cause of action in equity for specific performance of a contract is a different cause of action from an action at law to recover damages for the breach of a contract, even though the same contract be involved in both actions. We need not in this connection discuss the principle of res adjudicata or of estoppel by judgment any further than to make plain that a different cause of action is involved in this suit from that involved in the federal court case, and that therefore no question is presented of res adjudicata of *a cause of action* as such.

Upon this question the law is declared to be that "a judgment in a former suit, although between the same parties and relating to the same subject matter, is not a bar to a subsequent action, when the cause of action is not the same." 34 C.J. 813, § 1231. Again, "A former judgment between the same parties is a bar to the maintenance of the subsequent action when the causes of action in the two suits are identical. If the subsequent suit is upon a different cause of action, but is between the parties or privies to a former action, the former judgment is not, as such, a bar to the maintenance of the second action." 34 C.J. 874, § 1283. We are not here considering the question of the conclusiveness of a fact or issue actually determined by a court of competent jurisdiction in an action between the same parties. We shall have occasion a little later on to discuss that principle.

■ We are of the opinion that plaintiffs' petition, tested by a general demurrer, sufficiently stated a cause of action. The decision of the Circuit Court of Appeals in the case mentioned will be appealed to as an authority to the contrary. While the causes of action in that case and this are different, the contract upon which each was based is the same. The opinion indicates that the court's conclusion may have been based, at least in part, upon the view that at the time of the acts relied on to show a breach of the contract (the leasing of the land to third parties) there was no binding or enforceable obligation on the part of Mayfield Company to proceed with further performance of the contract in suit. After citing the allegations of the bill in equity as to the several acts of the parties following the deposit of the lease in escrow with a copy of the contract and $2,000 of the consideration and up to the time plaintiffs examined the title and made their written objections as provided in the contract, the court said: "When after ten days it [the title or defects] had not been cured, he [Rushing] was by a clear provision of the contract discharged from all obligation, and was free at his option to take his money down as he declared to Mayfield Company he was about to do. He thereby signified that he would not undertake himself to cure the defects. * * * The most that can be made out of what is alleged is that Rushing offered to leave the matter open for a few days, and finally for three or four days, for Mayfield Company to get the title cured, but with no acceptance of it as it was and no commitment to pay a penny unless within that time it was fully cured. On the fourth day the time allowed Mayfield Company to cure it was gone. Thereafter on offer of a good title Rushing would not have been bound to take it." On the allegations in plaintiffs' petition in the instant suit, we are forced to a different conclusion which we think is not inconsistent, at least not necessarily so, with the proposition that the Circuit Court of Appeals correctly determined the question before it.

No question is involved of there never having existed a contract, imposing upon the parties contractual duties and obligations. According to the allegations, there *was* such a contract, fully operative from the date of its execution, on October 3, 1930. The deposit of a copy of this contract with the escrowed lease and $2,000 did not prevent the contract from being immediately effective as the source of rights and obligations of the parties. The times specified in which the several parties were to do the several things stipulated were not, therefore, conditions precedent to the existence of contract rights or obligations. Rather they were conditions upon which existing contract rights and obligations would be forfeited, or at least terminated short of the ultimate object and purpose of the contract, namely, the delivery of the lease by Mayfield Company to plaintiffs for a consideration of $19,000. We may assume that in each provision for something to be done within a specified time, the time stated was of the essence of the contract. It is none the less true that the party for whose benefit the limitation of time was specified could waive it. The waiver need not be expressed, but would be implied from any conduct thereafter which clearly and certainly recognized the continued existence of the contract. When 10 days had expired after plaintiffs delivered to the defendant the written objections to the title, the plaintiffs had the right to regard the contract as at an end— the defendant's rights, if any, forfeited or, at the very least, the contract terminated or rescinded in accordance with its provisions. But plaintiffs' allegations—confessed as true by the general demurrer—were that "on or about November 29, 1930," Mayfield Company "advised the attorney for Rushing that they were working on the title and would be able to eliminate the defects and cure the title within a few days *to which Rushing assented.*" (Italics ours.) By those facts plaintiffs waived the 10 days as the time limit in which for defendants to

meet the objections. Plaintiffs not having specified any definite future date to which the original 10 days' time would be extended, the matter was left open, plaintiffs having the continuing right (unless ended by defendants' notice that it could not or would not cure the defects) to specify such date; subject, however, to the right of the defendant to be given reasonable notice thereof. This we regard as a well-established principle of equity jurisprudence which this court had occasion to consider and apply in Buck v. De Shazo, 5 S.W.(2d) 878. Of the situation here it is, we think, as true as was said in Heirs of Reddin v. Smith, 65 Tex. 26, of the one there involved: "He recognized appellees' right to the land upon payment of the purchase money, and he had no right to a rescission of the trade without giving them distinct notice of his purpose to require the purchase money to be paid within some reasonable period. *After waiving time, as an essential feature in the original contract, he could not deprive appellees of the benefit of the contract without giving them an opportunity to make the payments, the time for which he had indefinitely postponed by his own acts.*" (Italics ours.) For a more recent statement and application of the principle, see Lynch Davidson & Co. v. Hudson (Tex.Civ.App.) 15 S.W.(2d) 203.

It was further alleged that "on several occasions thereafter, the attorney for Rushing called on Lassiter, Warren & Simpson, attorneys for Mayfield Company, and who had full and plenary authority to represent Mayfield Company in the transaction, and requested the return of the abstract and such curative work as they had procured in order that he could determine whether or not the title was merchantable, *on each occasion informing said attorneys that Rushing would accept the title and waive the delay if the defects had been eliminated,* and on each occasion was informed by said attorneys *that they would return the abstract in a short time,* and on January 18, 1931, said attorneys informed him that the defects would be eliminated and the abstract returned in three or four days, and that Rushing would be expected to accept the title and go ahead with performance of the contract *to which the attorney for Rushing agreed.*" (Italics ours.) These allegations (the truth thereof confessed, as aforesaid) show that both parties regarded the contract as still in force with the obligation of the defendant to cure the objections not completely performed, but yet in the course of performance. Can it be doubted that while that situation continued to exist with no notice from plaintiffs advising defendant of a time in which if the objections were not cured they would regard themselves as no longer bound, had defendant returned the abstract with all objections fully cured, plaintiffs would not have been bound to take the lease and pay the additional consideration therefor? It seems to us there can be no ground for reasonable doubt upon that question.

We do not think the allegations susceptible of the construction that on January 18, 1931, plaintiffs fixed the limit of the extension of the original 10 days' time "at three or four days" thereafterwards. The right to fix the extended limit of time, it must be borne in mind, was a right of the plaintiffs. The only *right* of the defendant was to have reasonable notice of the time when so fixed. Of course, defendant could have discharged its obligation by reporting to the plaintiffs that they were unable to cure the objections. Plaintiffs' agreement that the defendant should have 3 or 4 more days' time in which to return the abstract with the curative work would not, under the circumstances of itself amount to a fixing of the utmost limit of time by the plaintiffs.

But whether so or not, it is immaterial since, according to the allegations, before the extreme limit of that time (4 days) had expired defendant leased a part of the land to a third party which, if it was then under contractual obligation, constituted a breach of the contract.

The 10 days' time which the defendant had in which to cure defects in the title having been extended to at least January 22, 1931, and as, we think an indefinite time longer, plaintiffs never had the opportunity to cure the defects themselves, nor to exercise the right, not expressly given by the contract, but undoubtedly implied, to accept the title with the defects. Just as certainly as that plaintiffs waived the 10 days' time and defendant kept assuring them that they would cure the objections, plaintiffs were under no obligation to undertake, themselves, to cure the objections, or to consider whether they would waive them and accept the lease notwithstanding the objections. These were contract rights which plaintiffs were denied by the act of defendant in disabling itself from proceeding with the contract. To us it scarcely seems arguable that if damages resulted from such act of the defendant, which the allegations of plain-

tiffs' petition show, a cause of action to recover such damages existed.

The most difficult problem presented is to determine the effect, if any, properly to be given to the action of the court in sustaining the so-called plea in abatement. Treating the plea in abatement as a plea of estoppel, which, if it had any merit, we think it was, the question suggests itself if the court's action upon same was proper, can it be said that the error in sustaining the general demurrer and dismissing the suit was harmless? It would certainly seem illogical that an action of the court, however correct, of which, because of prior action, it had deprived itself of jurisdiction, could render harmless so material an error as sustaining a general demurrer to a petition and dismissing the suit. We think, however, we need not definitely decide this question of whether the error of the court was rendered harmless since it is our view that even if the proposition be sound that had the court correctly determined the issue of estoppel it would render the error harmless, it does not appear with sufficient conclusiveness that an estoppel was shown.

 In considering whether a good defense in bar to plaintiffs' cause of action was presented as a pleading by the so-called plea in abatement, and if so, whether it was conclusively established by the evidence, we need not amplify the statement heretofore made that the cause of action in this suit was not the same cause of action in the federal court. If an estoppel by judgment was conclusively shown, it must be because some issue or fact essential to a recovery by the plaintiffs was expressly or by necessary implication determined against plaintiffs by the judgment of the federal court in the former action. "The operation of a judgment as an estoppel," says Texas Jur. "extends only to matters that were either expressly determined or necessarily involved in the adjudication." 26 Tex.Jur. p. 180, § 437. Another statement of the principle is: "In the absence of proof that a particular issue actually was tried and determined in arriving at a former judgment, it is conclusive by way of estoppel only as to those facts without the existence and proof or admission of which it could not have been rendered; in other words, it is conclusive evidence of whatever it was necessary for the court or jury to have found in order to warrant the decision or verdict in the former action, and no further." 34 C.J. 927,

§ 1332. The judgment which "the plea in abatement" alleged to have been conclusive was the judgment of the United States District Court. The pleadings made no reference to any judgment of the Circuit Court of Appeals. Relative to these facts, the law is declared to be that "The force of estoppel lies in the judgment itself; it is not the finding of the court or the verdict of the jury which concludes the parties, but the judgment entered thereon. The reasoning of the court in rendering a judgment forms no part of the judgment, as regards its conclusive effect, nor are the parties bound by remarks made or opinions expressed by the court in deciding the cause, which do not necessarily enter into the judgment." 34 C.J. 873, § 1282. The decree of the federal District Court does not of itself show what issues were determined. The decree recites the opinion of the court to have been that "plaintiffs' complaint as amended does not state a cause of action entitling them to specific performance of the contract sued on," etc. The failure of the bill to state a cause of action for specific performance in which subsequent lessees of the land in question were parties was not necessarily conclusive of the proposition that there were no contract obligations whatever. So far as the judgment itself shows, the court may have determined that no cause of action for specific performance was shown because no facts, as distinguished from mere conclusions, were alleged to show notice to the subsequent lessees of the land.

 Independently of the foregoing, the alleged judgment relied upon to show a conclusive previous adjudication of the lack of binding force of the contract at the time of the alleged breach was by defendant's own evidence shown to have been superseded by the judgment of the Circuit Court of Appeals, which latter was not in evidence. The opinion of that court was in evidence, but not the judgment. To determine the issue settled by a judgment, the opinion undoubtedly may be looked to in aid of the judgment, but we have found no authority that would sanction the proposition that the judgment may be wholly dispensed with as evidence and the opinion looked to exclusively. The rule is said to be that "if the judgment itself does not show what matters were litigated and decided, the fact may be shown from other parts of the record, or by competent evidence. * * * Nor can the estoppel be

extended to matters which the judgment expressly declares not to have been in issue in the action in which it was rendered, or to have been omitted from consideration therein." 34 C.J. 906, § 1317; Williams v. Wiley, 96 Tex. 148, 71 S.W. 12.

If we are warranted in looking to the opinion of the Circuit Court of Appeals, in the absence in evidence of the judgment, and are further warranted in assuming that there will at any rate be nothing in the judgment contrary to the opinion, we still do not get a clear answer to the question of whether that court actually determined that there was no such contractual relation between the parties as would give rise to a right of action for damages. In one place in the opinion it is said: "The plaintiffs contend that the contract bound Mayfield Company to have or to get a good title, and that, when it failed to do so, Rushing, by offering himself to perform, *could at least recover damages*. The defendants contend among other things that the contract required only that Mayfield Company exhibit and convey such title as it had, and that, on its failing of acceptance and on Rushing's electing not to perfect it, his only right was to take down his money and reject the lease." As to these contentions the court said: *"We find it unnecessary to settle this difference."* (Italics ours.) The court did settle that the trial court had no authority to decree that plaintiff recover the $2,000 saying: "The recovery of the $2,000 deposited which was not sued for was inappropriate in a judgment upon a motion to dismiss, and should be eliminated." The question occurs, What difference did the court find it unnecessary to settle? The most reasonable view would appear to be that the court passed upon neither of the two contentions mentioned; one of them being that plaintiffs were entitled to recover damages for the breach of the contract, the only subject matter of the present suit. Finally, the court, as further disclosed by the opinion, limited its action to an approval of the decree of the trial court in so far only as it adjudged that the bill stated no cause of action in equity for specific performance. The opinion, singling out such action, says: "We approve this action *expressing no opinion as to what, if any, relief the appellant may have at law*." (Italics ours.)

Stated as concretely as we may with reference to the very problem involved, the question is, Did the court by its judgment decide that at the time of the alleged breach of the contract by the defendant the pre-existing contractual relations of the parties had so ceased to exist that it must necessarily be true that the act of the defendant in leasing the land to others would constitute no breach of contractual duty to plaintiffs. We seriously doubt if it can be said that that question was adjudicated. If so, why would the court say it was expressing no opinion on the rights plaintiffs may have had in an action at law? The opinion of the court is susceptible to the interpretation that it was the court's view that even if contractual relations were still existing, the necessary steps to the full maturity of the ultimate right of plaintiffs to have the lease delivered had not been taken, without which the remedy of specific performance was unavailable. It is not unreasonable to suppose that the court considered that even if the defendant under the circumstances stated was under the contract duty, in the absence of a notice of inability to cure the defects, to return the abstract with the report of such curative work as had been done, nevertheless specific performance could not be decreed, because of the intervening option of the plaintiff to reject the title. The court stated as if it were important that "there is no statement that Rushing at any definite time either before or after January 28, 1931, had tendered the $17,000, or otherwise signified a willingness to accept the title as it was, or bound himself to do so." That may have been properly regarded as important in determining if a cause of action for specific performance was stated, but in our opinion it is not at all inconsistent with the existence of the contractual rights and obligations which would be a sufficient basis for a cause of action for damages. Before plaintiffs' obligation to tender the $17,000 or signify a willingness to accept the title ever could mature, he had the prior right to a 10 days' option in which to cure the title himself, and the implied right to determine whether he would accept the title with the objections not cured. The violation, if any, of those rights constitutes a part of the subject-matter of this suit. These considerations, we think, furnish a reasonable explanation of the expressions in the opinion indicating that the court was not passing upon the existence of contractual rights or duties that might possibly support an action for damages.

627

■ Regarding the want of conclusiveness as to matters excluded from consideration in the former action, one statement of the rule is: "A judgment or decree which expressly excepts or reserves from its operation specified rights or claims of the parties in suit, or the decision of questions in issue, or the right to take further proceedings in respect to certain matters, is not a bar to a subsequent action on the matters so reserved; but on the contrary the reservation itself becomes res adjudicata, and prevents the raising of any question as to the right to bring or maintain such subsequent suit." 34 C.J. p. 797, § 1217.

■ We are not dealing with a clear case of the exclusion from determination, of a particular fact or issue. Rather, there is presented the peculiar situation of the court apparently excluding an entire cause of action, but one in which it is difficult to say that an essential fact or issue was or was not determined in the former action. As said before, we think we are justified in not definitely determining the question here, but we cannot escape the conclusion that there is at least sufficient uncertainty upon the question that we cannot, if we were otherwise authorized to do so, hold that the action of the court in improperly, as we think, sustaining the general demurrer and dismissing the suit, was harmless error.

It is accordingly our conclusion that the judgment of the court below should be reversed and the cause remanded and it is so ordered.